## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CECILY PARKER,                           :
                                         :
            Plaintiff,                    :
                                         :            Civil Action File No.
v.                                       :
                                         :            _____
NATIONAL BOARD OF                        :
MEDICAL EXAMINERS,                       :
                                         :
            Defendant.                    :
_____         :

## COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF

Plaintiff Cecily Parker, ("Parker") files this Complaint for Emergency

Injunctive Relief against Defendant National Board of Medical Examiners

("NBME" or "Defendant") and respectfully shows the Court as follows:

## INTRODUCTION

1.

This is an action for emergency, preliminary and permanent injunctive relief,

and for attorneys' fees and costs incurred in bringing this action based on

Defendant's refusal to provide reasonable accommodations to Plaintiff pursuant

to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*. Parker

is currently completing third year medical student clinical rotation at Emory

University Medical School in Atlanta, Georgia, and has delayed completing the necessary U.S. Medical Licensing Examination ("USMLE") Step 1 by 15 months, after delaying her scheduling permits. She is in need of urgent injunctive relief to avoid further delays in taking Step 1 of this required licensing examination. Previously granted scheduling permits have been delayed because the NBME breached its affirmative obligation to accommodate Parker's disabilities, including dyslexia by refusing to provide Parker additional time to take the USMLE Step 1. As a result, Parker seeks a preliminary and permanent injunction prohibiting the NBME from continuing its violation of Plaintiffs ADA rights and compelling the NBME to allow Parker to take the examination with appropriate accommodations. NBME's actions violate the ADA, including 42 U.S.C. § 12189 on a continuing basis.

## PARTIES, JURISDICTION, AND VENUE

2.

Parker is a third-year medical school student at the Emory University School of Medicine who lives in Atlanta, DeKalb County, Georgia. Parker has been diagnosed with multiple disabilities that substantially limit the major life activities of learning, reading, concentrating, and thinking.

3.

Parker intends to take the United States Medical Licensing Examination (USMLE) Step 1, the standardized test administered by Defendant by the absolute latest date of February 2020 in Georgia.  Parker's disabilities limit her ability to demonstrate her true aptitude or achievement level on the USMLE Step 1 standardized examination in comparison to most people and constitute disabilities within the meaning of the Americans with Disabilities Act (ADA), 42 USC §12102(2).

4.

Defendant NBME is a District of Columbia non-profit organization headquartered in Philadelphia, Pennsylvania. NBME administers the USMLE, a three-step examination, the successful completion of which is required for medical licensure in the United States. Additionally, the level of performance on the USMLE is a primary determinant of the quality of institution for which a candidate will be accepted for residency training. Defendant has previously administered and will administer the USMLE Step 1 within the boundaries of this judicial district by February of 2020.

5.

NBME engages in business in Georgia and this judicial district, and this

action arises from those business activities. NBME, however, does not maintain a regular place of business in this state or this judicial district and does not have a designated agent for services of process in this state. Accordingly, under the Federal Rules of Civil Procedure, Defendant may be served through its registered agent in its state of incorporation; CT Corporation System 1025 Vermont Ave., N.W., Washington, D.C. 20005.

## SUBJECT MATTER JURISDICTION AND VENUE

6.

This action arises under the ADA, and accordingly, this Court has jurisdiction over a federal question pursuant to 28 U.S.C. §1331. This Court also has jurisdiction pursuant to 42 U.S.C. §12188(a)(l), which incorporates the provisions of 42 U.S.C. § 2000a-3(a), providing for civil actions in this Court by any person who is being subjected to discrimination on the basis of disability in violation of Title III of the ADA.

7.

Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendant is doing business in this judicial district by virtue of administering the USMLE Step 1 in this district, and the unlawful acts undertaken and resulting injuries occurred in this judicial district.

## **FACTUAL ALLEGATIONS**

8.

Parker began at the Emory University School of Medicine in the Summer of 2016 and is currently in her third year. Students at Emory University School of Medicine complete Step I of USMLE prior to beginning third year medical school clinical rotations.   However, Emory University School of Medicine allowed Parker to begin her third-year clinical rotations in January 2019, after a 12 month delay in seeking reasonable and required accommodations for testing.

9.

 Emory University School of Medicine requires students to take the USMLE Step 1 after 18 months of medical school.  She has applied for and been granted several scheduling permits to take the exam between March 1, 2018 and February 28, 2019. However, Parker has delayed taking the exam because the results of her practice tests indicate that she will not receive a passing score without reasonable accommodations.

10.

Parker's documented learning disabilities date back to elementary and junior high school.  Because she attended a small independent school, she was able to take advantage of universally granted informal accommodations, such as being

allowed extra time and access to tutoring services.

11.

Teachers in elementary and high school recognized that Parker had difficulty finishing tests and in-class assignments.  For example, teachers noted that Parker's performance on those matters was not comparable in quality to her non-timed, outside-of-class work.

12.

Parker's difficulties continued into college.  In November of 2011, Parker was diagnosed with Generalized Anxiety Disorder and Other Specified Anxiety Disorder at the Vanderbilt Psychological and Counseling Center.  On May 2, 2012, Parker's diagnosis was updated as Attention Deficit/ Hyperactivity Disorder, Generalized Anxiety Disorder, and Impulse Control Disorder.

13.

Psychological assessments revealed that Parker's disabilities particularly and negatively impact her mental processing speed and reading comprehension.  For example, her mental processing speed was noted as a "low average" score of 86 (18th percentile) on the Processing Speed Index (PSI).  This was remarkable given her above average abilities according to the Verbal Comprehension Index and the Perceptual Reasoning Index, as well as a high average Full Scale IQ test result.

14.

Assessments further revealed a learning disability in that her inability to process the written language substantially limits her reading and learning abilities and results in her being unable to perform adequately on timed examinations when compared to most people.

15.

As a result of her diagnoses and her difficulty with timed testing, it was recommended that Parker receive testing accommodations, including extended time on tests and testing located in a distraction-reduced environment.  Vanderbilt implemented these accommodations and they remained in place through her college career.

16.

When Parker subsequently attended Johns Hopkins University and Agnes Scott College for further pre-medical courses after graduating from Vanderbilt University, she received similar testing accommodations of extended time and testing in a distraction-reduced environment. With these accommodations, her testing more accurately reflected her abilities, rather than her disabilities.

17.

When Parker took the MCAT standardized test, she sought accommodations.

Her request was denied due to an incomplete application because her psychological evaluation fell outside of the required three-year window (i.e., hers was 3 years and 2 months).  Parker sat for the exam without accommodations and obtained a score that was considered low relative to her grade point average at Vanderbilt.  Had Parker been given accommodations as requested, her performance on the MCAT would have been a better reflection of her true abilities.

18.

As referenced above, Parker sought admission to medical school and was accepted to Emory University in 2016.

19.

 Upon her matriculation to Emory Medical School in August of 2016, the School administered the Nelson Denny Reading Test (NDRT), a standardized test to evaluate the reading ability of high school and college students.  The results of the NDRT showed that Parker read only 106 words per minute, placing her in the 5th percentile.  The Medical School noted that Parker's score was the slowest among all of her peers and possibly the slowest the Dean had ever observed during his tenure at Emory.

20.

Consistent with her slow reading speed, Parker initially struggled and

received several unsatisfactory grades in the first few months of medical school prior to implementation of her required accommodations. She was unable to complete her work in standard time, and her performance reflected her learning disability.  Emory referred Parker to Dr. Martha Burdette, Ph.D. at the Benjamin Franklin School for remediation and coaching.

21.

After observing and working with Parker, Dr. Burdette referred her to Dr. Lori R. Muskat, Ph.D., a licensed psychologist, for an updated and comprehensive evaluation.  Dr. Muskat is a specialist in neuropsychological assessment and the differential diagnosis of learning disorders, psychiatric disorders and medical conditions.  She also serves as a consultant to the Educational Testing Service related to requests for disability accommodations for standardized tests it administers.

22.

Dr. Muskat conducted an extensive assessment over seven separate sessions with Parker.  Dr. Muskat's assessment confirmed that Parker demonstrated a pattern of deficits in processing speed, reading decoding and reading speed.  Dr. Muskat concluded that Parker suffered from a Reading Disorder, i.e., Dyslexia, which impacts Parker's ability to decode words in context, reading fluency,

reading rate, and her reading comprehension.  Dr. Muskat further concluded that Parker suffers from Unspecified Neurodevelopmental Disorder, which adversely impacts her processing speed.  These observations were in addition to Parker's longstanding anxiety and attention deficit disorders, which Dr. Muskat also confirmed.

23.

Dr. Muskat recommended several accommodations in light of Parker's disabilities, including double time for all tests and assignments, double break times, multi-day testing, and reduced distraction testing environment.

24.

Because of her record of disabilities, Emory University consistently and continuously provided testing accommodations to Parker, including the following: double time, paper exams, audio presentation of questions, extended break time, examinations spread out over two days, and testing in a low-distraction environment. With these testing accommodations in place, Parker's examination scores were more reflective of her abilities than her disabilities.

25.

Students at Emory (as in many medical schools in the United States) are required to take and pass the USMLE Step 1 before starting the third year of

medical school. The third year of school consists of clinical rotations, i.e., medical

education through the practical application of the principles learned in the

classroom. Emory requires Step 1 be taken before the third year begins to avoid

interfering with the third-year studies. Emory supports Parker's requested

accommodations, and after 12 months of delay in seeking NBME

accommodations, Emory allowed Parker to begin her third year clinical rotations to

avoid additional delays in completing medical school. At Emory, passing the Step

1 is a prerequisite for taking Step 2, applying for and obtaining residency

admission, and being able to sit for the final Step 3 of the licensing exam.

26.

In light of Parker's need for accommodations and the NBME's refusal to

provide them, Emory University granted Parker permission to delay her USMLE

Step 1 test until the completion of her third year clinical rotations in February or

March of 2020.

27.

The NBME develops and administers the USMLE Step 1 at various test sites

and on various dates throughout the United States, including in Atlanta, Georgia.

The results of each student's scores are reported to that student's medical school.

28.

The NBME acknowledges the right of disabled persons to accommodations by providing an application on which examinees can request test accommodations for the USMLE Step 1, including accommodations for learning disabilities like those suffered by Parker.

29.

Anticipating the completion of her second year of medical school, Parker received a permit to take the USMLE Step 1 between March 1, 2018 and May 31, 2018.

30.

On December 14, 2017 Parker requested that NBME grant test accommodations based on her disabilities, including testing over a two-day period, double time for test taking, double break times, and the use of a separate distraction reduced room.  Parker applied for the testing accommodations pursuant to USMLE polices and using forms it designs for that purpose.  In support of her application, Parker provided extensive evidence of her record of disabilities, including reports from Dr. Muskat and the Vanderbilt Psychological and Counseling Center.  Parker also provided records confirming that she received accommodations while at Vanderbilt University, Johns Hopkins University, Agnes

-12-

Scott College, and Emory University.  Parker's request was further supported by

the Assistant Dean of Medical Education and Professor of

Microbiology/Immunology at Emory University, Dr. Gordon G. Churchward,

Ph.D.

31.

In a letter dated February 12, 2018, the NBME denied Parker's request for

an accommodation for the USMLE Step 1 claiming Parker had not demonstrated a

"substantial limitation in a major life activity relative to most people or that

standard test timing is a barrier to your access to the USMLE."  Nonetheless,

NBME allowed, "as a courtesy" that Parker could have double break times and the

use of a separate testing room.

32.

As set forth above, Parker delayed her scheduled testing while she pursued

her appeal of NBME's initial decision.

33.

On June 1, 2018, Parker, acting through counsel, wrote to NBME to request

reconsideration of the denial of her accommodations request. Parker provided

NBME with additional information and evidence, including a May 24, 2018

opinion letter from Dr. Lori R. Muskat, confirming and reiterating the multiple

instances throughout Parker's medical assessments indicating that her disability

limited her in a major life function relative to most of the population.

34.

By an August 17, 2018 letter, Dr. Catherine Farmer, on behalf of NBME,

denied Parker's request for reconsideration.

35.

The facts establish that Parker has definite learning disabilities that

substantially limit her major life activities of learning, reading and writing as

compared to most people. Under the ADA, Parker is entitled to a reasonable

accommodation of additional time to take the USMLE Step 1 exam. NBME's

refusal to provide Parker with an accommodation of extra time for the USMLE

Step 1 exam, despite knowing of Parker's documented learning disabilities that are

protected under the ADA, is a violation of the ADA.

36.

Parker will be unable to complete her medical school education in the same

manner and time as her classmates if she does not successfully complete the

USMLE Step 1. Moreover, she will be placed at a distinct disadvantage of

competing for quality residency positions if she must take the exam without

accommodations for her disabilities. Parker's medical career and dream could end

if she is unable to pass the USMLE Step 1, because the NBME will not accommodate her disability as the Act requires.

37.

The delay in USMLE testing caused by the NMBE's intransigence has already delayed Parker's anticipated graduation from medical school by one year, thus reducing by one year her future earnings as a medical doctor and requiring her to pay for an additional year of associated costs at Emory.

38.

Parker has applied for a scheduling permit to take the USMLE Step 1 for the eligibility period February 1 – April 30, 2020.

**COUNT I:**

**FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA;
REQUEST FOR INJUNCTIVE RELIEF**

39.

Title III of the ADA (46. U.S.C. § 12189) prohibits discrimination against persons with disabilities in professional examinations such as the USMLE Step 1 as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such

examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

40.

The NBME is covered by the ADA pursuant to 42 U.S.C. §12189 in its

capacity as the administrator of the USMLE Step 1.

41.

Pursuant to 28 C.F.R. § 36.309(b), the NBME must assure that any

examination

is selected and administered so as to best insure that, when the examination is administered to an individual with a disability that impairs sensory, manual or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factors the examination purports to measure, other than reflecting the individual's impaired sensory, manual, or speaking skills.

One reasonable accommodation for a disabled person, such as Parker, that may be

allowed under the ADA is lengthening the time permitted for completing the

examination.

42.

Parker has a learning disability that substantially limits her major life

activities of learning, reading and writing. Parker's condition, which has been

diagnosed through extensive testing, examination and evaluation by experts in this

field, constitutes a disability within the meaning of the ADA.

43.

Under the ADA, a disability is defined, in part, as a physical or mental impairment that substantially limits one or more major life activities of an individual. 42 U.S.C. § 12102(2). Under the authority of 42 U.S.C. § 12134, the Department of Justice has promulgated regulations (28 CFR § 35.104) that include "learning" and "work" within the definition of major life activities. The major life activity of learning also includes "reading" and "writing" as activities protected by the ADA. The "substantially limited" standard for the major life activity of learning, reading, or writing, is established when "the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people." 28 CFR, pt. 36, App. B.

44.

Parker's disability precludes her from learning, reading and writing in the same manner and in the same amount of time as most people. This learning disability substantially limits her major life activities of learning, reading, and writing, in comparison to most people.

45.

Successful passing of the USMLE is a prerequisite to licensure to practice medicine in the United States, and the level of performance in the taking of the

USMLE is a primary determinant of a candidate's job opportunities for residency. Thus, Parker's entire future livelihood as a medical doctor rests on this exam.

46.

Parker made formal written request of Defendant for reasonable accommodations for her disabilities in connection with taking the USMLE Step 1, i.e., double time to take the exam, exam taken over 2 days, and a distraction reduced testing environment, all accommodations NBME has made to some people who have requested the accommodations. Such accommodations are consistent with the informal accommodations she received pre-K through high school; and the formal accommodations she received in undergraduate studies at Vanderbilt, Johns Hopkins, and Agnes Scott; and the formal accommodations she has received and used to successfully complete all her coursework for the first 2 pre-clinical years of medical school at Emory. The NBME has granted similar accommodations to other candidates in the past taking the Step 1 exam.

47.

The NBME's refusal to provide the reasonable test accommodations Parker requested for the USMLE Step 1 constitutes an unlawful failure to accommodate a disabled person in violation of the ADA.

48.

Parker will be irreparably harmed if the NBME continues its unlawful refusal to provide her the reasonable test accommodation as requested and unless this Court grants preliminary injunctive relief prohibiting the continued violation of Parker's ADA rights and compelling the NBME to provide the requested accommodation, in that (a) Parker's medical school career will be placed on hold because a passing score on the USMLE Step 1 is a prerequisite to continuing her medical school education; (b) given her history with prior examinations, Parker is justifiably concerned that under standard time her scores will reflect her disability rather than her ability;  (c) Parker's opportunity to engage in her career of choice is effectively on hold until the NBME is compelled to comply with the ADA by providing the accommodations to which she is entitled; (d) Parker will be unable to maintain the same pace of her medical school career as her peers if she is unable to pass the USMLE Step 1 at this time; (e) requiring Parker to take the USMLE Step 1 without accommodation, puts her at distinct disadvantage given her disability; (f) reduced performance on the USMLE Step 1 as a result of not receiving accommodation significantly reduces Parker's future residency and professional career options; and (g) Parker faces a future dismissal proceeding under Emory's policy if she fails to pass the USMLE Step 1 in a timely manner.

49.

The NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

50.

The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with equal opportunities to those persons in the community without disabilities. The public interest will not be served by allowing the NBME to continue its unlawful refusal to provide Parker with the ADA accommodations to which she is justly entitled.

51.

As a result of the NBME's violation of the ADA, Parker has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

52.

The NBME in denying Parker's request for reasonable accommodation violated the ADA and has done so while acting maliciously or with reckless indifference for Parker's ADA rights.

53.

Accordingly, under the ADA, Parker is entitled to and hereby requests entry of a preliminary injunction directing the NBME immediately to cease and desist from its refusal to accommodate Parker's requests for accommodation on the USMLE Step 1 and ordering that the NBME immediately comply with the ADA by allowing Parker the requested accommodation of double the standard time, testing over two days, and a distraction reduced testing environment to take the USMLE Step 1.

54.

Further, Parker is entitled to and hereby requests that the Court enter a permanent injunction directing that the NBME immediately to cease and desist its refusal to accommodate Parker's request for accommodations on the USMLE Step 1 and any future USMLE Step examinations to be taken by Parker and that the NBME comply with the ADA by providing Parker's requested accommodations with regard to the USMLE Step 1 and future USMLE examinations for which Parker is otherwise entitled to sit and for which she otherwise makes proper application.

WHEREFORE, Plaintiff prays that this Court grant judgment in her favor and against the Defendant as follows:

1.     Enter a preliminary mandatory injunction directing the NBME to accommodate Plaintiff's request for reasonable accommodations on the USMLE examinations, including USMLE Step 1 pursuant to 42 U.S.C. § 12188(a)(2);

2.     Enter judgment in the form of a permanent mandatory injunctive order against Defendant directing NBME to provide Plaintiff's requested reasonable accommodations for all USMLE examinations, including USMLE Step 1 and any future USMLE Step examinations for which Parker is otherwise entitled to sit and for which she has made proper application under 42 U.S.C. § 12188(a)(2);

3.     Enter judgment against the Defendant awarding Plaintiff recovery of her reasonable attorney's fees, costs and expenses incurred in bringing and prosecuting this litigation pursuant to 42 U.S.C. § 12188(a)(l) and 42 U.S.C. § 2000a-3(a);

4.     Awarding such other and further relief as may be appropriate, in law or in equity, to which Plaintiff may otherwise by entitled; and

5.     Grant Parker a trial by jury on all issues appropriately tried to a jury.

*Signature on the following page.*

Respectfully submitted, this the 17th day of October 2019.

|  | /s/ Andrew Y. Coffman |
|--|--|
|  | J. Matthew Maguire, Jr. |
|  | Georgia Bar No. |
|  | mmaguire@pcwlawfirm.com |
| **PARKS, CHESIN & WALBERT, P.C.** | Andrew Y. Coffman |
| 75 14th Street, 26th Floor | Georgia Bar No. 173115 |
| Atlanta, Georgia 30309 | acoffman@pcwlawfirm.com |
| Telephone: 404-873-8000 |  |
| Facsimile:  404-873-8050 |  |

*Counsel for Plaintiff*