## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CECILY PARKER,

Plaintiff,

v.

NATIONAL BOARD OF
MEDICAL EXAMINERS,

Defendant.

Civil Action File No.

1:19-cv-04657-AT

## PLAINTIFF'S CORRECTED BRIEF IN
## SUPPORT OF A PRELIMINARY INJUNCTION

Plaintiff respectfully submits this corrected brief in support of her request for an order directing the National Board of Medical Examiners (NBME) to institute appropriate reasonable accommodations that will allow Plaintiff to take the United States Medical Licensing Examination (USMLE).  This brief corrects the internal docket references and replaces Doc. 4.

### I.    INTRODUCTION

Cecily Parker is a third-year medical student preparing to take the USMLE, a standardized test mandatory for her continued progress through medical school and graduation.  The competitive examination also will determine her residency placement.  Parker has been diagnosed with the following multi-categorical

disabilities:  Attention Deficit / Hyperactivity Disorder (ADHD) – combined type; Other Specified Anxiety Disorder; Reading Disorder (dyslexia); and Unspecified Neurodevelopmental Disorder. Her learning and reading disabilities manifest in a marked reduced ability to process the written word, which requires her to take a substantially longer amount of time than most people to read and to process information that she does read. Because of these disabilities, Plaintiff received testing accommodations consistently at every level of education from junior high school to medical school.

Defendant NBME administers the USMLE and is responsible for reviewing and approving requests for testing accommodations under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12189.

In anticipation of sitting for the USMLE, Plaintiff sought the following reasonable accommodations from Defendant: (1) double the standard test-taking time, (2) testing over two-day period, and (3) a distraction-reduced testing environment.  Defendant rejected Plaintiff's requested accommodations.  Because Plaintiff will be at a distinct disadvantage if she must take the USMLE Step 1 examination without accommodations, the ADA mandates that Defendant must permit her the accommodations she seeks.

## II.   FACTUAL BACKGROUND

Parker is a third-year student at the Emory University School of Medicine ("Emory Medical School") with a history of learning disabilities.[1] In order to continue her medical education and training, Parker is required to take the USMLE Step 1 examination. Parker is required to take USMLE Step 1 before February 2020 in Georgia, or she will suffer further delay of her graduation from medical school.

### 1.  Parker's History of Disabilities and Testing Accommodations

Parker's junior high and high school teachers recognized that she had difficulty finishing timed examinations in the same manner as other students. Most teachers, after recognizing her difficulties, provided Parker with universally available informal accommodations, including additional time to complete her projects and tests. Parker's scores on the Scholastic Aptitude Test college entrance exam were lower than expected, for someone with such a high grade point average. Her difficulties regarding timed examinations and significant reading projects continued during her undergraduate work at Vanderbilt University. In November

---

[1] *See* **Doc. 5-1, pp. 68-69**:  June 2018 Accommodations Appeal, Exhibit 5 (Letter from Lori R. Muskat, Ph.D.)

of 2011, Parker was diagnosed with Generalized Anxiety Disorder and Other Specified Anxiety Disorder at the Vanderbilt Psychological and Counseling Center.  On May 2, 2012, Parker's diagnosis was updated as Attention Deficit/ Hyperactivity Disorder, Generalized Anxiety Disorder, and Impulse Control Disorder. As a result of her diagnoses and her difficulty with timed testing, Vanderbilt implemented accommodations, including extended time on tests and testing located in a distraction-reduced environment.  These accommodations remained in place through Parker's college career.  When Parker subsequently attended Johns Hopkins University and Agnes Scott College for further pre-medical courses after graduating from Vanderbilt University, she received similar testing accommodations of extended time and testing in a distraction-reduced environment. With these accommodations, her testing more accurately reflected her abilities, rather than her disabilities.

Parker sat for the Medical College Admission Test without accommodations and obtained a score that was considered low relative to her grade point average at Vanderbilt. **Doc. 5-1, pp. 102-103** (Letter from Emory University Assistant Dean of Medical Education.) With accommodations, her performance on the MCAT would very likely have been a better reflection of her true abilities.  Parker was accepted to Emory Medical School in August of 2016.

Upon her matriculation to Emory Medical School in August of 2016, the School administered a standardized test known as the Nelson Denny Reading Test (NDRT) to all incoming students to evaluate their reading ability.  The results of the NDRT showed that Parker read only 106 words per minute, placing her in the 5th percentile.  The Medical School noted that Parker's score was the lowest among her peers and possibly the slowest reading rate the Dean had ever observed during his tenure at Emory.  (**Doc. 5-1, p. 102**.)

Consistent with her slow reading speed, Parker initially struggled and received several unsatisfactory grades in the first few months of medical school prior to implementation of her required accommodations. She was unable to complete these initial examinations in standard time, and her performance on these reflected her disability.  As a consequence, Emory referred Parker to Dr. Martha Burdette, Ph.D. at the Benjamin Franklin School for remediation and coaching. After observing and working with Parker, Dr. Burdette referred her to Dr. Lori R. Muskat, Ph.D., a neuropsychologist, for an updated and comprehensive evaluation.  Dr. Muskat is a specialist in standardized testing accommodations and a consultant to the Educational Testing Service related to requests for disability accommodations for standardized tests it administers. (**Doc. 5-1, p. 66** (Letter from Dr. Lori Muskat.))  Dr. Muskat performed extensive

testing over a period of seven separate sessions with Parker.  Her testing

confirmed that Parker demonstrated a pattern of deficits in processing speed,

reading decoding and reading speed.  Dr. Muskat concluded that Parker suffered

from a Reading Disorder, i.e., Dyslexia, which impacts Parker's ability to decode

words in context, reading fluency, reading rate, and reading comprehension.  Dr.

Muskat further concluded that Parker suffers from Unspecified

Neurodevelopmental Disorder, which adversely impacts her processing speed.

These observations were in addition to Parker's longstanding anxiety and

attention deficit disorders, which Dr. Muskat also confirmed. Dr. Muskat

recommended several accommodations in light of Parker's disabilities, including

double time for all tests and assignments, double break times, multi-day testing,

and reduced distraction testing environment. Because of her record of disabilities,

Emory University consistently and continuously provided testing

accommodations to Parker, including the following:  double time, paper exams,

audio presentation of questions, extended break time, examinations spread out

over two days, and testing in a low-distraction environment. With these testing

accommodations in place, Parker's examination scores have been more reflective

of her abilities than her disabilities.

The severity of Plaintiff's disabilities is illustrated by her performance on a series of psychological test batteries, including:

    a.   Testing of Parker's cognitive abilities (using the Wechsler Adult Intelligence Scale or WAIS) demonstrated that she scored above average in the areas of verbal comprehension and perceptual reasoning (87th percentile). However, the index of her working memory and her processing speed scores fell below average. Combined, her working memory score and her processing speed score placed her in the below average range, at the 16th percentile. The discrepancy between her scores on the higher- and lower-order processes means that she has less evenly-developed reasoning and problem-solving abilities and lower cognitive proficiency than most people.

    b.   Tests related to Parker's phonology or reading comprehension demonstrated significant impairment on timed tasks. Her ability to decode words when presented in context placed her in the 35th percentile. She was deficient in word-paring, scoring in the 4th percentile. Her actual reading rate and comprehension was also significantly deficient; she scored in the 6th percentile.

c.    Parker's test results reveal ongoing, mild dyslexia and difficulty blending and segmenting sounds, resulting in below-grade reading that is characterized by mispronunciations, hesitation and omissions. Overall, her difficulty in decoding words causes slow reading and low comprehension relative to most people with her intellectual and conceptual capacity.

## 2. The USMLE Step 1 Examination

The NBME develops and administers the United States Medical Licensing Examination (USMLE) Step 1 Exam at various test sites and on various dates throughout the United States, including in Atlanta, Georgia. Passing the Step 1 is a prerequisite for taking Step 2, applying for and obtaining residency admission, and being able to sit for the final Step 3 of the licensing exam. Students' scores are reported to their medical schools and most schools require passage of the exam before allowing the student to advance to the third-year of medical school training.

The NBME acknowledges the right of disabled persons to accommodations by providing an application on which examinees can request test accommodations for the USMLE Step 1, including accommodations for learning disabilities like those suffered by Parker. Anticipating the completion of her second year of

medical school, Parker received a permit to take the USMLE Step 1 between March 1, 2018 and May 31, 2018.

On December 14, 2017 Parker made a timely request that NBME grant test accommodations based on her disabilities, including testing over a two-day period, double time for test taking, double break times, and the use of a separate distraction reduced room.  (**Doc. 5-1, pp. 105-110.**)  In support of her application, Parker provided extensive evidence of her record of disabilities, including reports from Dr. Muskat and the Vanderbilt Psychological and Counseling Center.  On December 14, 2017, as part of her application to take the USMLE, Parker submitted documentation of her learning disabilities and requested reasonable accommodations consisting of double the standard time, testing over two days, and a distraction-reduced testing environment.  Parker supported her application with substantial evidence of her disabilities, including the following test results:

- On the WAIS-IV:  Processing Speed Index (PSI) she scored 76, placing her in the **5th percentile**.

- On the Cognitive Proficiency Index (CPI) Parker scored 85, placing her in the **16th percentile**.

- The 32-point gap between her CPI score and her above-average General Ability Index score of 117 (87th percentile), is rare and occurs in only 1.6% of people in the general population.

- On the Woodcock-Johnson Tests of Cognitive Ability (WJA-IV), Parker achieved the following results: **13th percentile** in Reading Rate; **23rd percentile** in Oral Reading; **29th percentile** in Reading Fluency; and **4th percentile** in Word Reading Fluency.

- The results of the Nelson Denny Reading Test (NDRT) revealed the following impairments: **6th percentile** in Reading Rate; **33rd percentile** in Reading Comprehension – Standard Time; and **55th percentile** in Reading Comprehension – Extended Time.

(**Doc. 5-1, pp. 36-64** (Assessment of Dr. Lori Muskat.))

Parker also provided records confirming that she received accommodations while at Vanderbilt University, Johns Hopkins University, Agnes Scott College, and Emory University.  Parker's request was further supported by the Assistant Dean of Medical Education and Professor of Microbiology/Immunology at Emory University, Dr. Gordon G. Churchward, Ph.D.  (**Doc. 5-1, pp. 102-103**.)

On February 12, 2018, NBME rejected Parker's request for accommodations:

> Despite the diagnostic conclusions of your evaluating/treating professionals and your self-reported difficulties, the objective data and information presented in the submitted documentation does not demonstrate a substantial limitation in a major life activity relative to most people or that standard test timing is a barrier to your access to the USMLE.

(**Doc. 4-1**.)  Notwithstanding the NBME's conclusion, it offered to provide the following "arrangements" for Parker "as a courtesy": (1) 50% additional break time and (2) a separate testing room. *Id.*  After Parker provided additional information specifically related to the impact her disabilities have on her relative to most people, and requested reconsideration, the NBME again denied her request on August 17, 2018.

On June 1, 2018, Parker requested further reconsideration from NBME based upon its denial of additional information and evidence, including a May 24, 2018 opinion letter from Dr. Muskat confirming and reiterating the multiple instances throughout Parker's medical assessments indicating that her disability limited her in a major life function relative to most of the population.  (**Doc. 5-1, pp. 16-22**.)  On August 17, 2018 the NBME denied Parker's request for reconsideration.  (**Doc. 4-2**:  Letter from Catherine Farmer.)

At Emory Medical School, a passing Step 1 score is usually required for a student from second to third year. This is to minimize interference with the intense third-year curriculum, which consists of clinical rotations, i.e., medical

education through the practical application of the principles learned in the classroom. Recognizing Parker's need for accommodations and the NBME's refusal to provide them, Emory Medical School made a special exception for Parker by granting her permission to delay her USMLE Step 1 test until the completion of her third-year clinical rotations in February or March of 2020. Parker applied for a scheduling permit to sit for the USMLA Step 1 examination during the eligibility period February 1 – April 30, 2020. Further requests for accommodations would be futile in light of NBME's consistent rejections.

## III.   DISCUSSION

### A.   Parker has a learning disability protected by the ADA.

The ADA was enacted in part, to provide "a clear and comprehensive national mandate for the elimination of discrimination ... and to provide clear, strong, consistent, enforceable standards addressing discrimination...." 42 U.S.C. §12101(b)(l) and (2). Title III of the ADA prohibits discrimination against persons with disabilities in professional examinations and requires that such examinations be provided in a manner that is accessible to persons with such disabilities:

> Any person that offers examinations or courses related to applications, licensing, or credentialing for secondary and post-secondary education, professional, or trade purposes shall offer such examination or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

-12-

42 U.S.C. §12189.

The Department of Justice (DOJ) regulations promulgated under Title III of the ADA require that examinations covered by 42 U.S.C. §12189 be selected and administered in a manner that accurately reflects the individual's aptitude or achievement level rather than the individual's specific impairment.[2] A covered entity discriminates against a disabled individual in violation of the ADA when it fails to make a reasonable accommodation for a known physical or mental impairment. 42 U.S.C. §12112(b)(S)(A). The regulations promulgated under Title III of the ADA also specifically state that changes in the length of time permitted for completing an examination may be an appropriate accommodation. 28 C.F.R. §36.309(b)(2).

---

[2] 28 C.F.R. §36.309(b)(l)(i) states:

> an examination covered by this Section must assure that (i) the examination is selected and administered so as to best insure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure).

The NBME administers the USMLE as a nationwide examination for prospective physicians, which must be successfully completed to obtain a medical license in the United States. Accordingly, the NMBE is a covered entity and is required to comply with the provisions of Title III of the ADA. *See Gonzalez v. National Bd. of Medical Examiners,* 225 F.3d 620, 626 (6th Cir. 2000). Because the NBME is subject to the ADA and a request for additional time is an appropriate accommodation, the issue is whether Parker has a disability that is protected under the ADA.

For purposes of the ADA**,** a person is disabled if he or she suffers from a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42. U.S.C. §12102(2)(A). Although the ADA does not specifically define all terms used in the definition of disability, the DOJ, which has authority to implement regulations under Title III of the ADA, defines physical or mental impairment as including "specific learning disabilities." 28 C.F.R. §36.104. These regulations further define major life activity as including "walking, seeing, hearing, speaking, breathing, learning and working." *Id.* §36.104(2). In interpreting the regulations, courts have concluded that the major life activity of learning includes reading and writing. *See Bartlett v. New York State*

-14-

*Bd. of Law Examiners,* 226 F.3d 69, 80 (2nd Cir. 1998); *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d, 141, 155 (1st Cir. 1998).

Dr. Lori Muskat, Parker's treating psychologist and expert in the field of learning disabilities and accommodations for standardized testing conducted a series of tests over an extensive period of observation.  Parker's cognitive abilities as measured using the Wechsler Adult Intelligence Scale (WAIS) demonstrated that she scored above average in the areas of verbal comprehension and perceptual reasoning. (87th percentile).  However, the index of her working memory and her processing speed scores fell below average.  Dr. Muskat found that combined, Parker's working memory score and her processing speed score placed her in the below average range at the 16th percentile. The discrepancy between her scores on the higher- and lower-order processes means that she has a less evenly developed reasoning and problem-solving abilities and lower cognitive proficiency that most people.  Testing of Parker's phonology or reading comprehension using the Woodstock-Johnson IV Tests of Achievement demonstrated significant impairment on timed tasks.  Her ability to decode words when presented in context placed her in the 35th percentile.  She was deficient in word-paring, scoring in the 4th percentile.  Her actual reading rate and

comprehension was also significantly deficient; she scored in the 6th percentile. (**Doc. 1, p. 48**.)

Parker's test scores reveal ongoing, mild dyslexia and difficulty blending and segmenting sounds, resulting in below-grade reading characterized by mispronunciations, hesitation and omissions.  Overall, her difficulty in decoding words causes slow reading and low comprehension relative to most people, and especially when compared to people with her intellectual and conceptual capacity. The test data, coupled with Parker's history of reading difficulties, establishes that, as compared to most people, Parker is restricted as to the conditions, manner and duration under which she can perform the skills related to reading. Accordingly, she has a disability that substantially limits a major life activity and she is entitled to reasonable accommodation in accordance with Title III of the ADA.

### B.   A Preliminary Injunction is Appropriate

The ADA specifically includes the remedies set forth in 42 U.S.C. §2000a-3(a) for any violation of §12189, including preliminary and permanent injunctive relief. *See* 42 U.S.C. §12188(1)(a). Section 2000a-3(a) specifically provides that temporary or permanent injunctive relief is available as a remedy to persons aggrieved and to prevent further violations of law. 42 U.S.C. §2000a-3(a).

The purpose of injunctive relief is to prevent a future harmful act and preserve the Court's ability to render a meaningful decision on the merits. *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).  Even though injunctive relief is an extraordinary remedy, courts grant such relief when necessary to prevent irreparable injury and to preserve the plaintiff's ability to obtain meaningful relief.  Preventing an ongoing violation of the ADA and reserving the ability to grant the protections authorized and guaranteed under the ADA clearly is within the realm of appropriate injunctive relief. *See* 42 U.S.C. §12188(a).

"[F]ederal district court[s] consider four factors when deciding whether to grant a preliminary injunction: whether the plaintiff will be irreparably harmed if the injunction does not issue; whether the defendant will be harmed if the injunction does issue; whether the public interest will be served by the injunction; and whether the plaintiff is likely to prevail on the merits."  *Camenisch*, 451 U.S. at 392; *Four Seasons Hotels & Resorts v. Consorcio Barr*, 320 F.3d 1205, 2010 (11th Cir. 2003).  As referenced above, the ADA specifically permits an injunction to redress ADA violations. 42 U.S.C. §12188. "The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief."

*Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983)

(citing *Atchison, Topeka and Santa Fe Railway v. Lennen*, 640 F.2d 255, 259–61

(10th Cir.1981)).  A plaintiff's showing a substantial likelihood that a defendant

has violated federal statutes and regulations "is sufficient to support an injunction

remedying those violations."  *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417,

1423 (11th Cir. 1984).  Equitable defenses are not available against the

enforcement of federal law. *See United States v. City and County of San Francisco*,

310 U.S. 16, 30–31 (1940).  Nonetheless, because of the severe disadvantage

imposed on Parker if she were to take the USMLE examinations without

accommodations and the undue delay to her educational advancement, irreparable

harm is clear and no legal remedy can compensate her for Defendant's violation of

the ADA.

### 1.   Parker is Likely to Succeed on the Merits of her Claim

The probability of success that Parker must show to warrant injunctive relief

depends largely on the sufficiency of proof of the other elements required for

injunctive relief. "Where the other factors are strong, a showing of some likelihood

of success on the merits would justify temporary injunctive relief." *Productos*

*Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th

Cir.1980). The Tenth Circuit similarly phrased the issue as follows:

> When the first three requirements for a preliminary injunction are
> satisfied, the moving party's burden of proof on the fourth
> requirement is lessened 'It will ordinarily be enough that the plaintiff
> has raised questions going to the merits so serious, substantial,
> difficult and doubtful, as to make them fair ground for litigation and
> thus for more deliberate investigation.'

*Tri-State Generation,* 805 F.2d at 358 (quoting *Olero Sav. & Loan Ass 'n.* v.

*Federal Reserve Bank,* 665 F.2d 275, 278 (10th Cir. 1981)).

Parker presents strong evidence establishing that she suffers from learning disabilities that will impact her ability to compete on the USMLE examination regime, including Step I.  The threatened injury to Plaintiff in the form of an adverse score that will dictate the trajectory of her future education and career paths, outweighs any possible harm to Defendant and serves clear public interests Congress articulated when enacting the ADA and that the Department of Justice considers under its enforcement regulations.

The evidence outlined above raises more than just a serious and substantial question and creates more than fair ground for litigation. It shows that Parker has learning disabilities that result in a significantly reduced ability to read and decode the written word when compared to most people. Her disabilities substantially limit her major life activities of learning, reading and writing. Under Title III of the ADA, Parker is entitled to have those ADA rights acknowledged and protected by the NBME through the reasonable accommodation of additional

-19-

testing and break times and distraction-reduced testing environment. 42 U.S.C. §12189.

## 2.    Parker will be irreparably harmed without injunctive relief.

To continue her medical school career and be licensed as a practicing physician, Parker must take and pass all three of the USMLE Step exams. Because of Defendant's refusal to provide reasonable accommodations, Parker has already delayed her graduation by a year. After making a special exception by allowing her to advance to her third-year of medical school training without the Step 1, Emory has imposed a deadline of February 2020 for Parker to take and pass the examination.  Parker must begin to prepare for the test well in advance of any test date.  Therefore, the need for injunctive relief is immediate if she is to enforce the ADA and avoid permanent harm to her education and career.

Importantly, the USMLE Step 1 Exam is an important factor for students vying for residency programs at offering institutions. Residency institutions will use Parker's score on the USMLE Step 1 Exam to determine whether he is a qualified candidate for their programs.  "The score a medical student achieves on the Step I examination is a major factor in determining into which medical specialty or third year training program a student will be accepted." *Rush v. National Board of Medical Examiners*, 268 F.Supp.2d 673, 676 (N.D. Tx., 2003).

If a student with Parker's disabilities is required to take the exam without reasonable accommodations, the learning disabilities put her at a distinct disadvantage, as compared to most people, and certainly as compared to her peers taking the exam.

> Decreasing the time needed to take a mastery tests such as the USMLE by, for example, refusing a time accommodation for a person such as Plaintiff, is tantamount to increasing the difficulty of that test. By forcing an individual with a reading disability to adhere to prescribed time limits that do not allow [her] adequate time to process test information in effect makes the testing situation more difficult for [her] than for [her] peers. Another result of ta lack of accommodation is that the exam does not test the person's mastery of the subject but instead tests the legal of disability.

*Id.* at 677. Without the requested accommodation, the playing field for the Step 1 exam will not be level, and Parker's score will not be a full and complete measure of her abilities. The consequences of a score that measures the extent of her reading disabilities rather than her abilities are that she will forever fall behind her peers at school and even in her professional career.

The significance of the USMLE examination demonstrates why injunctive relief is necessary. There simply is no adequate remedy at law if Parker is denied her rights to reasonable accommodation. Sadly, no future judicial remedy could correct or undo the consequences of such events; there is no amount of money or other remedy at law that could compensate her for the loss she will suffer.

-21-

## IV.  CONCLUSION

Parker has shown that she is disabled under the ADA and that her disabilities require Defendant to implement reasonable accommodations for those disabilities. Because she is likely to succeed on the merits of her claim and the irreparable injury she would suffer in the absence of a remedy, the Court should act to preserve and protect Parker's rights under the ADA by ordering Defendant to accommodate Parker's disabilities by allowing her double the normal testing and break times, testing over a two day period, and a distraction reduced testing environment.

<em>/s/ Andrew Y. Coffman</em>
J. Matthew Maguire, Jr.
Georgia Bar No. 372670
mmaguire@pcwlawfirm.com
Andrew Y. Coffman
Georgia Bar No. 173115
acoffman@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**
75 14th Street, 26th Floor
Atlanta, Georgia 30309
Telephone: 404-873-8000
Facsimile:  404-873-8050

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on October 22, 2019 that I served the within and foregoing

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** with the Clerk

of Court using the CM/ECF  system which will automatically send e-mail

notification to such filing to all counsel of record.

I also certify that this document was prepared with Times New Roman 14-

point font pursuant to Northern District of Georgia Local Rules 7.1 and 5.1C.

*/s/ Andrew Y. Coffman*
Andrew Y. Coffman
Georgia Bar No. 173115
acoffman@pcwlawfirm.com
